UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                        :
UNITED STATES OF AMERICA
                                                        :
        - v. -                                          14 Cr. 008 (SAS)
                                                        :
DEVYANI KHOBRAGADE,
                                                        :
                Defendant.
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - -   x


## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT


PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States of America

Kristy J. Greenberg
Amanda Kramer
Assistant United States Attorneys
        -Of Counsel-

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

    I.    Khobragade's Status While in the United States ................................................ 2

    II.   The Criminal Charges and Khobragade's Departure ......................................... 3

APPLICABLE LAW .............................................................................................................. 4

    I.    Consular Immunity Under the Vienna Convention on Consular Relations .......... 5

    II.   Diplomatic Immunity Under the Vienna Convention on Diplomatic Relations ........ 8

        A.   Diplomatic Immunity, Generally ............................................................... 8

        B.   Termination of Diplomatic Immunity ......................................................... 9

    III.  State Department's Determinations as to Immunity Status ............................. 11

ARGUMENT ........................................................................................................................ 11

    I.    This Court Should Deny the Defendant's Motion to Dismiss the Indictment
        Because the Defendant Does Not Have Immunity for the Crimes Charged in the
        Indictment. ................................................................................................ 11

        A.   The Defendant's Consular Position Never Provided More Than Official Act
            Immunity, and the Indictment Does Not Relate to Official Acts ................... 12

        B.   Any Period of Diplomatic Immunity the Defendant Claims She Enjoyed
            in the Past is No Bar to Current Prosecution of the Charges in the Indictment ............. 13

    II.   The Government Does Not Object to the Defendant's Motion to Exonerate Her
        Bail Conditions ......................................................................................... 21

    CONCLUSION ................................................................................................................ 22

TABLE OF AUTHORITIES

Cases

Abdulaziz v. Metropolitan Dade County,
   741 F.2d 1328 (11th Cir. 1984)................................................................ 11, 19

Baoanan v. Baja,
   627 F. Supp. 2d 155 (S.D.N.Y. 2009)....................................................... 7, 13

Brzak v. United Nations,
   597 F.3d 107 (2d Cir. 2010)......................................................................... 9

In re Baiz,
   135 U.S. 403 (1890) ............................................................................... 11, 19

Park v. Shin,
   313 F.3d 1138 (9th Cir. 2002)............................................................ 6, 7, 13

Salazar v. Burresch,
   47 F. Supp. 2d 1105 (C.D. Cal. 1999)......................................................... 6

Swarna v. Al-Awadi,
   622 F.3d 123 (2d Cir. 2010) ........................................................ 6, 7, 8, 9, 13

United States v. Cole,
   717 F. Supp. 309 (E.D. Pa. 1989) ............................................................... 6

United States v. Gorcyca,
   2008 WL 4610297 (E.D.N.Y. Oct. 16, 2008) ...................................... 12, 21

United States v. Guinand,
   688 F. Supp. 774 (D.D.C. 1988) .......................................................... 11, 18

United States v. Kuznetsov,
   442 F. Supp. 2d 102 (S.D.N.Y. 2006)............................................. 11, 17, 19

United States v. Lumumba,
   741 F.2d 12 (2d Cir. 1984).......................................................................... 17

Statutes

Title 22, United States Code, Section 287 ..................................................... 17

Title 18, United States Code, Section 1546 .................................................. 3, 4

Title 18, United States Code, Section 1001 .................................................. 3, 4

Title 18, United States Code, Section 2 .................................................................... 4

Title 22, United States Code, Section 254d ......................................................... 8, 9

Regulations

22 C.F.R. § 41.21(a)(4) ............................................................................................ 7

Treaties

21 U.S.T. 77 ................................................................................................... passim

21 U.S.T. 3227 .............................................................................................. passim

21 U.S.T. 1418 .............................................................................................. passim

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                            :
UNITED STATES OF AMERICA
                                                            :
        - v. -                          14 Cr. 008 (SAS)
                                                            :
DEVYANI KHOBRAGADE,
                                                            :
                Defendant.
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT**

PRELIMINARY STATEMENT

Having been charged with visa fraud and making false statements to the United States

government in connection with bringing a personal domestic worker to the United States and

employing her under exploitative work conditions, Devyani Khobragade (the "defendant" or

"Khobragade"), without appearing before the Court, now moves through her attorney to dismiss

the charges on the ground that she is immune from prosecution. The law is clear, however, that

she is not. Having left the United States and returned to India, the defendant currently has no

diplomatic or consular status in the United States, and the consular level immunity that she did

have at the relevant time does not give her immunity for the charges in this case, crimes arising

out of non-official acts. Recognizing this, the defendant attempts through her motion to concoct

a theory of immunity out of a United Nations General Assembly "Blue Card" that she

purportedly had for a brief Indian delegation visit to the United Nations that ended close to three

months before her arrest. That attempt fails both factually and legally, and it gives her no added

immunity from the charges here. Accordingly, for the reasons set forth below and in the

accompanying declaration from the U.S. State Department, Khobragade's motion to dismiss the

1

Indictment should be denied.

The defendant also moves to exonerate her bail conditions. Although ordinarily a defendant is not entitled to litigate issues like bail without actually appearing before the Court, because the defendant has left the country, the issue of bail is now moot for all practical purposes. If she appears before the Court to face the charges at a later date – either following an arrest on the outstanding warrant or upon a decision by her to return to confront the charges – the Court will set new bail conditions at that time. The Government therefore does not object to exoneration of her bail conditions.

### STATEMENT OF FACTS

I.    Khobragade's Status While in the United States

Khobragade is an Indian citizen who, until recently, served as an Indian consular officer in this country. Specifically, from approximately October 26, 2012 through January 8, 2014, Khobragade served as the Deputy Consul General for Political, Economic, Commercial and Women's Affairs at the Consulate General of India in New York City. See Declaration of Attorney-Adviser in the Office of the Legal Advisor of the United States Department of State Stephen Kerr, dated January 29, 2014 (the "Kerr Decl."), ¶ 3, (attached hereto as Exhibit A). In addition, for several days in August 2013, while still holding her consular position, Khobragade asserts that she was a member of India's delegation to the United Nations General Assembly ("UNGA") during the Prime Minister of India's brief visit to the United Nations. (See Defendant's Motion to Dismiss, dated January 14, 2014 at 6, Ex. 1 (the "Motion" or "Mot.")). Finally, on January 8, 2014, Khobragade became Counselor to the Permanent Mission of India to the United Nations. (See Kerr Decl. ¶ 4). The day after that appointment, however, Khobragade left the country at the insistence of the U.S. Department of State and was, as a result, removed by

2

the Indian government from her short-lived United Nations position.  (See id. ¶ 4).  She has had no diplomatic status in the United States since.

As described in more detail below, Khobragade's position as a consular officer supplied her only with "official act" immunity, which does not extend to private conduct underlying the present charges.

II.    The Criminal Charges and Khobragade's Departure

On December 11, 2013, Khobragade was charged by sealed complaint with visa fraud and making false statements to the United States Government, in violation of Title 18, United States Code, Sections 1546 and 1001.  The charges arose from illegal actions Khobragade took in arranging for the admission into the United States of a live-in childcare provider and housekeeper (the "Victim") whom Khobragade intended to – and ultimately did – employ under abusive and illegal conditions.

Khobragade was arrested on those charges on December 12, 2013, at a time when she was Deputy Consul General and therefore enjoyed only limited consular immunity.  (See id. ¶ 3). Upon her arrest, she was brought to the United States Courthouse at 500 Pearl Street, where she was presented that same day before the Honorable Debra Freeman, United States Magistrate Judge.[1]  On Judge Freeman's order, Khobragade was released on the following bail conditions: a $250,000 personal recognizance bond, co-signed by three financially responsible persons; travel restricted to the United States, with advance notice to Pretrial Services for travel outside of the

---

[1] The defendant complains in her motion that she "was not formally arraigned on the charges in the Complaint."  (Mot. at 6, 12.)  It is not clear what she is complaining about, as the Federal Rules of Criminal Procedure do not provide for the arraignment of a defendant on charges contained in a complaint.  Rather, Rule 10 of the Federal Rules of Criminal Procedure provides that a defendant must be arraigned on charges contained in an indictment or an information. Rule 5 of the Federal Rules of Criminal Procedure governs the initial appearance of a defendant following an arrest by Complaint, and the defendant was properly presented on the day of her arrest in accordance with that rule.

3

Southern District of New York; no travel outside of the United States; surrender of travel documents, with a prohibition on any application for new travel documents; regular pretrial supervision; a prohibition on sponsorship of any visa applications for other persons; a prohibition on contact between the defendant (or anyone acting at the defendant's direction) and the Victim or her immediate family; and required notification of Pretrial Services upon any changes in employment.  Subsequently, on December 23, 2013, the Honorable James Cott, United States Magistrate Judge, with the consent of the Government, granted the defendant's request that she be permitted to check in monthly by computer instead of in person.

On January 9, 2014, the day after Khobragade was appointed as Counselor to the Permanent Mission of India to the United Nations, the grand jury returned the Indictment, which charged Khobragade in two counts with visa fraud and making false statements to the Government in violation of Title 18, United States Code, Sections 1546, 1001, and 2.  The case was assigned to this Court.

On the same day on which the Indictment was returned, after the Indian government refused the State Department's request that it waive the immunity for Khobragade, the State Department requested that she depart the United States.  On that same day, at an appearance before this Court (where the defendant herself did not appear), this Court ordered that her bail conditions be modified to allow her to return to India.  The defendant left the United States on a flight to India later that evening.

## APPLICABLE LAW

The rules governing the immunity accorded foreign diplomatic and consular representatives assigned to the United States are embodied primarily in two international treaties: the Vienna Convention on Diplomatic Relations and the Vienna Convention on Consular

4

Relations.  These treaties have been formally adopted by the United States and, along with

certain domestic legislation enacted to implement them, provide the governing law in this area.

See generally United States Department of State, Bureau of Diplomatic Security, Diplomatic and

Consular Immunity, Guidance for Law Enforcement and Judicial Authorities, Department of

State Publication 10524 (2011), *available at*

http://www.state.gov/documents/organization/150546.pdf (the "State Department Publication")

(attached hereto as Exhibit B).

I.    Consular Immunity Under the Vienna Convention on Consular Relations

The Vienna Convention on Consular Relations ("VCCR") is an international treaty that

governs relations between member states and foreign consular officials.  It sets forth, *inter alia*,

the privileges and immunities to be accorded to consular officers and other consular personnel.

See The Vienna Convention on Consular Relations, Apr. 24, 1963, *entered into force with*

*respect to the United States Dec. 24, 1969*, 21 U.S.T. 77.  Unlike members of a diplomatic

mission, who tend to reside in the host country's capital and are responsible for the sending

country's diplomatic communications with the host country, consular personnel perform a

variety of functions that are of interest primarily to the sending country, but not the host country,

such as issuance of travel documents, attending to the difficulties of its own nationals in the host

country, and generally promoting the commercial interests of the sending country.  See VCCR,

art. 5(a)-(m).  Consular officers are those members of consular posts who are recognized by both

the sending and the host country as fully authorized to perform the broad array of formal

consular functions.  See State Department Publication at 6.  A Deputy Consul General of a

foreign consulate qualifies as a "consular officer" under the VCCR.  See VCCR, art.1(1)(d)

("consular officer" means any person, including the head of a consular post, entrusted in that

5

capacity with the exercise of consular functions); VCCR art. 9(1)(a) ("Heads of consular posts are divided into four classes, namely: (a) consuls-general . . . ."); see also Park v. Shin, 313 F.3d 1138, 1141 (9th Cir. 2002) (finding that Deputy Consul of the Korean Consulate qualifies as a "consular officer" within the meaning of the VCCR).

In keeping with their lesser status, the privileges and immunities accorded to consular officers is quite limited.  Consular officials are not immune from arrest or detention; they may be arrested and detained pending trial in the case of grave crimes, which include all federal felonies, and where the arrest is made pursuant to a decision by a competent judicial authority (e.g., a warrant issued by an appropriate court).  See VCCR, art. 41(1); see also Salazar v. Burresch, 47 F. Supp. 2d 1105, 1110 (C.D. Cal. 1999) ("A 'grave crime' has been interpreted by the Department of State to mean a felony") (quoting United States v. Cole, 717 F. Supp. 309, 323 n.5 (E.D. Pa. 1989)).  If criminal proceedings are instituted against a consular officer, the consular officer must appear before the competent authorities.  See VCCR, art. 41(3).

Consular officers have only "official acts" immunity with respect to both criminal and civil matters.  Article 43(1) of the VCCR provides that "[c]onsular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect of acts performed in the exercise of consular functions." VCCR, art. 43(1).  The hiring of a personal domestic worker is not an official act that confers immunity.  See Kerr Decl. ¶¶ 3, 4; see also Swarna v. Al-Awadi, 622 F.3d 123, 133-140 (2d Cir. 2010) (holding that former Kuwaiti diplomat's employment of domestic servant during his service to Kuwaiti Mission was a private act, rather than an official diplomatic act, and thus former diplomat was not entitled to residual diplomatic immunity under Vienna Convention on Diplomatic Relations (VCDR) from servant's claims against him under New York law for failure

6

to pay legally required wages, fraud, unjust enrichment, and breach of contract); Park, 313 F.3d

at 1141-43 (holding that Deputy Consul General for Korean Consulate in United States was not

entitled to consular immunity because hiring and supervision of a personal domestic servant was

not performed in the exercise of consular functions); Baoanan v. Baja, 627 F. Supp. 2d 155, 163-

170 (S.D.N.Y. 2009) (holding that former diplomat's employment of a domestic worker in his

residence at foreign Mission was a private act for which former diplomat could not avail himself

of residual immunity pursuant to VCDR Article 39(2)).  Furthermore, the submission of an

application for an A-3 visa for a domestic worker is not an official act of a consular officer.

(Kerr Decl. ¶ 3).  A-3 visas are obtained for "aliens employed in a domestic or personal capacity

by a principal alien, who are paid from the private funds of the principal alien and seek to enter

the United States solely for the purpose of such employment."  (Id. (quoting 22 C.F.R. §

41.21(a)(4)).  The State Department "does not issue an A-3 visa unless the visa applicant has

executed a contract with the principal alien documenting the personal employment relationship."

(Id.).

     Article 53(3) of the VCCR provides that the privileges and immunities of a consular

officer end when the functions of a member of a consular post have come to an end and his

duties cease, and either the consular official leaves the United States or a reasonable period to

depart has expired.  See VCCR art. 53(3).  According to Article 53(4) of the VCCR, residual

immunity after departures exists only "with respect to acts performed by a consular officer or a

consular employee in the exercise of his functions," in other words, only for *official* acts

committed during the exercise of the former officer's functions in their former positions.  Id. art.

53(4).  As the State Department Publication explains generally with respect to any of the various

types of diplomatic or consular immunity:

> [Immunity from prosecution] is . . . not a perpetual benefit.  With
> the exception of immunity for official acts (which exists
> indefinitely), criminal immunity expires upon the termination of
> the diplomatic or consular tour of the individual enjoying
> immunity.  Therefore, obtaining an indictment, information, or
> arrest warrant could lay the basis for a prosecution at a later date,
> e.g., if the diplomat returns to the United States at a later date in a
> private capacity.

State Department Publication at 13.

II.     Diplomatic Immunity Under the Vienna Convention on Diplomatic Relations

A.     Diplomatic Immunity, Generally

The Vienna Convention on Diplomatic Relations ("VCDR") is an international treaty that

sets forth, *inter alia*, the privileges and immunities to be accorded to diplomatic agents and other

diplomatic mission personnel.  See The Vienna Convention on Diplomatic Relations, Apr. 18,

1961, *entered into force with respect to the United States Dec. 13, 1972*, 23 U.S.T. 3227.  A

"diplomatic agent" is the term for ambassadors and the other diplomatic officers who generally

have the function of dealing directly with host country officials.  See State Department

Publication at 4.  Diplomatic agents enjoy a higher degree of immunity than consular-level

immunity, and may not be arrested or detained, unless their immunity is waived by the sending

state.  See VCDR, art. 29, art. 31(1); see also Swarna, 622 F.3d at 134-140.  When a waiver is

not granted, however, an offender may be expelled from the United States and a warrant issued

so that criminal proceedings can proceed if the offender returns.  See State Department

Publication at 5-6.

The protections of diplomatic immunity under the VCDR are carried into effect by Title

22, United States Code, Section 254d, which provides that "[a]ny action or proceeding brought

against an individual who is entitled to immunity with respect to such action or proceeding under

the [VCDR] or under any other laws extending diplomatic privileges and immunities, shall be

dismissed." 22 U.S.C. § 254d.  This section "makes pellucid that American courts must dismiss

a suit against anyone who is entitled to immunity under either the VCDR or other laws

'extending diplomatic privileges and immunities.'" Brzak v. United Nations, 597 F.3d 107, 113

(2d Cir.) cert denied, 131 S. Ct. 151 (2010).

> B.     Termination of Diplomatic Immunity

Although active diplomats enjoy broad immunity pursuant to the VCDR for both private

and official acts, former diplomats whose appointments have been terminated retain immunity

only for their prior *official* acts, and have no protection from legal actions based on their prior

*private* acts.  See VCDR, art. 39(2); see also Swarna, 622 F.3d at 134.  Specifically, Article 39(2)

of the VCDR states:

> When the functions of a person enjoying privileges and immunities
> have come to an end, such privileges and immunities shall
> normally cease at the moment when he leaves the country, or on
> expiry of a reasonable period in which to do so, but shall subsist
> until that time, even in case of armed conflict.  However, with
> respect to acts performed by such a person *in the exercise of his
> functions as a member of the mission,* immunity shall continue to
> subsist.

VCDR, art. 39(2) (emphasis added).  Thus, Article 39(2) of the VCDR provides for "residual"

immunity, "which is a less expansive immunity that remains with the former diplomats for

certain acts committed during their occupation of the diplomatic station.  Specifically, once a

diplomat becomes a 'former' diplomat, he or she is not immune from suit for prior acts unless

those acts were performed 'in the exercise of [the former diplomat's] functions as a member of

the mission.'" Swarna, 622 F.3d at 134 (quoting VCDR art. 39(2)).

The State Department long ago formally informed all nations who send diplomats to this country that the VCDR will not bar the criminal prosecution of a former diplomat for crimes – except for official acts – committed during the period of the diplomat's appointment in this country.  See Kerr Decl. ¶ 13.  This has been the State Department's formal interpretation of the VCDR since at least 1984, when, in a circular diplomatic note to all foreign missions, the Secretary of State declared:

> On the termination of criminal immunity, the bar to prosecution in the United States would be removed and any serious crime would remain as a matter of record.  If a person formerly entitled to privileges and immunities returned to this country and continued to be suspected of a crime, no bar would exist to arresting and prosecuting him or her in the normal manner for a serious crime allegedly committed during the period in which he or she enjoyed immunity.  This would be the case unless the crime related to the exercise of official functions, or the statute of limitations for that crime had not imposed a permanent bar to prosecution.

U.S. Department of State Circular Diplomatic Note, dated March 21, 1984, at 2–3 (the "1984 Diplomatic Note") (attached hereto as Exhibit C); see also Kerr Decl. ¶ 13.

The State Department reiterated this position in 1989, in another communication to the chiefs of all diplomatic missions that stated, "The Department wishes to remind the missions that in any case involving criminal activity no immunity exists against the arrest and prosecution of a person formerly entitled to privileges and immunities who returns to the United States following the termination of his or her official duties, unless it can be proved that the crime *related to the exercise of official functions*."  U.S. Department of State Circular Diplomatic Note, dated November 15, 1989, published at 2 Foreign Affairs Manual Exhibit 233.4 at 17 (emphasis added), *available at* http://www.state.gov/documents/organization/84395.pdf (the "1989 Diplomatic Note") (attached hereto as Exhibit D); see also Declaration of the Legal Adviser of the U.S. Department of State, Abraham D. Sofaer, dated July 5, 1988, ("Sofaer Decl."), at 6

("[T]he rules on termination of immunity are exactly the same whether the person involved leaves or remains in the United States following the termination of his or her diplomatic status: that person is subject to prosecution for criminal acts committed while in diplomatic status, except for acts committed in the court of official functions.") (submitted in United States v. Guinand, 688 F. Supp. 774 (D.D.C. 1988)) (attached hereto as Exhibit E).

III.     State Department's Determinations as to Immunity Status

        "A court's reliance on the State Department's certification when determining diplomatic immunity has a long history in this country's jurisprudence." United States v. Kuznetsov, 442 F. Supp. 2d 102, 106 (S.D.N.Y. 2006).  As far back as 1890, the Supreme Court stated that "the certificate of the Secretary of State . . . is the best evidence to prove the diplomatic character of a person." In re Baiz, 135 U.S. 403, 421 (1890).  Indeed, "courts have generally accepted as conclusive the views of the State Department as to the fact of diplomatic status." Abdulaziz v. Metropolitan Dade County, 741 F.2d 1328, 1331 (11th Cir. 1984); see also Kuznetsov, 442 F. Supp. 2d at 107 (observing that "courts have continued to find that recognition and certification by the State Department is necessary to establish diplomatic immunity").

ARGUMENT

I.     This Court Should Deny the Defendant's Motion to Dismiss the Indictment Because the
       Defendant Does Not Have Immunity for the Crimes Charged in the Indictment.

        The defendant currently enjoys no diplomatic status, and at the time of her arrest, the defendant's position as a consular official gave her immunity from prosecution for official acts only.  It did not extend to the crimes charged in the Indictment, private acts taken in relation to the employment of a domestic employee and a visa application submitted to the United States government in connection with that employment.  The fact that on January 8, 2014, the

defendant was transferred to the Indian mission to the United Nations and then immediately asked to leave the following day does not give her any immunity from the charges here. Furthermore, the defendant's claim that her possession of a "Blue Card" in connection with a visit from the Indian Prime Minister to UNGA close to three months before her arrest confers her with immunity is both convoluted and baseless. Accordingly, the defendant's motion to dismiss should be denied.[2]

A.    The Defendant's Consular Position Never Provided More Than Official Act Immunity, and the Indictment Does Not Relate to Official Acts.

From October 26, 2012 to January 8, 2014, the defendant served as a consular official. That position afforded her only official act immunity then, and now that she is no longer in the position, affords her only official act immunity residually. See Kerr Decl. ¶ 3; see also VCCR art. 43(1); 53(3); 53(4). Indeed, the defendant does not claim otherwise. Her motion is instead based exclusively on the unsupportable claim that the defendant somehow obtained and retains full diplomatic immunity from supposedly assuming a position as "Special Advisor to the United Nations" on August 26, 2013 (Mot. at 6), and assuming the position as "Counselor at the Permanent Mission of India to the United Nation" on January 8, 2014 (id.). The defendant does not dispute – nor could she – that her consular position afforded her only official act immunity.

The Indictment charges offenses based on the defendant's private conduct, not her official conduct. The defendant is charged with crimes of visa fraud and making false statements

---

[2] It is unclear whether the defendant – who has left this country and kept herself outside the jurisdiction of the Court – is even entitled to bring her motion, given that the fugitive disentitlement doctrine generally bars a defendant from invoking the authority of this Court while simultaneously evading it. See United States v. Gorcyca, No. 08-CR-9 (FB), 2008 WL 4610297, at *2 (E.D.N.Y Oct. 16, 2008) (denying motion to dismiss indictment under fugitive disentitlement doctrine where defendant was indicted while abroad and made no effort to return to U.S.). But because the defendant's claim of immunity here is so patently meritless, the Court can and should deny the defendant's motion on its merits.

in order to obtain the admission of the Victim into the United States to be a live-in childcare provider and housekeeper. (See Indictment, ¶¶ 52-53). The Victim was not an employee of the Consulate General of India, did not perform work related to consular functions, worked exclusively for the defendant as a caretaker for the defendant's children and as a cook and housekeeper in the defendant's home, and was paid by a relative of the defendant, not by the Government of India. (See Indictment ¶¶ 11, 12, 21, 22(c), 32, 40). The defendant also obtained an A-3 visa for the Victim, and such visas are issued only for *personal* employees of consular officers. (See Indictment Ex. B at 2, 4; Indictment Exhibit C at 5-6, 12; Kerr Decl. ¶ 3). Numerous courts – including the Second Circuit – have expressly held that a defendant's actions in hiring such a personal domestic worker do not constitute official acts for immunity purposes. See Swarna, 622 F.3d at 134-140; see also Park, 313 F.3d at 1142; Baja, 627 F. Supp. 2d at 170. Indeed, the State Department, whose views must be given great weight, has unequivocally concluded that the defendant "did not employ [the Victim] in her capacity as Deputy Consul General, and thus did not enjoy immunity from prosecution for the crimes for which she was arrested on December 12, 2013." (Kerr Decl. ¶ 3).

B. Any Period of Diplomatic Immunity the Defendant Claims She Enjoyed in the Past is No Bar to Current Prosecution of the Charges in the Indictment.

Recognizing that consular immunity – the level of immunity that she had as a Deputy Consul General – does not protect her from this prosecution, the defendant tries to find some basis for asserting diplomatic-level immunity. But the defendant's claim to diplomatic immunity does not bar prosecution either. The defendant claims that she held diplomatic immunity from August 26, 2013 through December 31, 2013 as a member of India's delegation to the UNGA. (Mot. at 5-6, Ex. 1). That assertion is incorrect, and flatly rejected by the State Department. (See Kerr Decl. ¶ 5).

13

Section 11 of the Convention on the Privileges and Immunities of the United Nations (the "General Convention"), which provides that representatives to the United Nations and its conferences shall, while exercising their functions and during their journey to and from the place of the meeting, enjoy the same privileges and immunities that diplomatic envoys enjoy (including immunity from criminal jurisdiction under Article 31(a) of the VCDR), did not apply to Khobragade at any relevant time. See Convention on the Privileges and Immunities of the United Nations, Feb. 13, 1946, 21 U.S.T. 1418 *acceded to by the United States* Apr. 29, 1970, Section 11. Khobragade was not exercising any function related to United Nations representation at, or immediately before or after, the time of her arrest on December 12, 2013. (See Kerr Decl. ¶ 6). Although the United States has consistently interpreted Section 11 of the General Convention to provide diplomatic level immunity to those foreign government representatives of certain ranks who travel to the United States for UN business, (see id. ¶ 8), this did not apply to Khobragade at the time of her arrest. Khobragade did not travel from India to New York for business before the UN; she resided in New York as India's Deputy Consul General and that is why she was in New York at the time of her arrest. (See id.). Indeed, the Government of India represented her to the State Department as a consular officer and the State Department accepted her in that capacity, according her just the privileges and immunities commensurate with her consular status. (See id.).

Not surprising considering its purpose, Section 11 of the General Convention was not intended to cover individuals – like Khobragade – residing in New York as consular officers, who are subsequently accredited as a member of a UN delegation. (See id. ¶ 9). Rather, it was intended to extend diplomatic privileges and immunities to certain high-level, non-resident representatives to the UN, who were traveling "to the United Nations for a short time to attend

14

specific meetings – such as the annual fall meetings of the General Assembly." See Exec. Rep. No. 91-17 at 3 (March 1970) (quoted in Kerr Decl. ¶ 9.).

In any event, even if Section 11 did apply here, for a whole host of reasons the documentation that Khobragade presented in support of her motion to dismiss "fails to establish that she had Section 11 immunity at the time of her arrest, if she had it at any point in time." (Kerr Decl. ¶ 11). First, the defendant's own exhibit – the supposed "UN Accreditation Record" that she attaches as Exhibit 1 (Mot. at 6) – does not say what she claims it says. The defendant claims this record establishes an appointment at the United Nations that began on "August 26, 2013" and "continued unabated through and including December 31, 2013," in an obvious attempt to make it appear as if it would include the date of arrest, December 12, 2013. (Mot. at 6). The exhibit shows no such thing. On its face, the document describes a United Nations "Meeting" that was to continue for that entire period, but approves the defendant's participation only from an "Arrival date" of August 26, 2013 through a "Departure date" of August 31, 2013, months before Khobragade's arrest. (Mot. at Ex. 1). In any event, such "arrival" and "departure" dates are plainly wrong since she was present in the United States both before and after those dates in her consular position, and the UN – in obtaining accreditation for delegates to its conferences – informs the United States of the dates of arrival and departure from the United States for members of the UN delegations, not the dates of business before the UN. (See Kerr Decl. ¶¶ 10, 11(a)).

Second, as the State Department's declaration makes clear, while Khobragade's name appears on a list sent to the United States Mission to the UN by the UN Office of Protocol on August 26, 2013, as part of the Indian delegation for the main part of the regular session of the 68th UN General Assembly (which ended in September 2013), the dates given for her appear as

15

August 2013 to August 2016. (See id. ¶ 11(b)). Again, the State Department has concluded that

such a date range, which extends into the future all the way to 2016, is "incorrect and

meaningless", especially since the 68th General Assembly meeting was not going to extend past

December 2013, and the main part of the regular session during which the Indian Prime Minister

visited took place in September 2013. (Id.).

Third, Khobragade's name in fact does not even appear on the consolidated list of UNGA

delegation members produced by the UN. (See id. ¶ 11(c)). That makes sense, since at all times

she remained identified to the State Department's Office of Protocol as Deputy Consul General

and no dual-accreditation request was sent to State Department's Office of Protocol. (See id.).

Finally, Khobragade, who remained as the Deputy Consul General during the relevant

period, was not exercising any functions as a member of the Indian UN delegation at the time of

her arrest, nor was she traveling to or from the place of a UN General Assembly meeting. (See

id. ¶ 12). Indeed, the defendant's motion to dismiss states that she was appointed as a Special

Advisor to the UN during the Indian Prime Minister's visit, (Mot. at 6), and the Indian Prime

Minister's visit concluded in September 2013, close to three months before the defendant's

arrest. (See id.).[3]

Thus, for a myriad of reasons, the defendant's assertion that she had diplomatic immunity

---

[3] In any event, the defendant's claim that she had a "Blue Card" does not, in and of itself, mean
anything. (Mot. at 6). The defendant admits, in passing, that her "Blue Card" was issued "by the
U.N.," but then misleadingly cites to the State Department's publication "Diplomatic and
Consular Immunity – Guidance for Law Enforcement and Judicial Authorities." (Mot. at
6). Apart from being the same color, blue cards issued by the United Nations have nothing to do
with those issued by the State Department. Blue cards issued by the United Nations are simply
grounds passes and do not, standing alone, confer or indicate diplomatic immunity. See Note by
Chief of Protocol of the United Nations, dated August 23, 2013, at 3, *available at*
http://www.un.int/protocol/documents/NV_GA68_Arrangements.pdf, (describing grounds
pass). They are entirely different from the blue cards issued by the State Department to
diplomatic officers with full diplomatic immunity and described in the State Department
publication Khobragade cites. See State Department Publication at 17.

as a result of some accreditation she had as a member of India's delegation to UNGA from August 26, 2013 through December 31, 2013 is wrong. (See Kerr Decl. ¶ 5). But even if she had diplomatic immunity at any point in time, she did not at the time of her arrest, because the Indian Prime Minister's visit to the United Nations ended close to three months before her arrest, and the two-day period she was with the Permanent Mission of India to the United Nations, January 8 and 9, 2014, occurred long after her arrest.[4]

But significantly, determining the exact dates of the defendant's prior periods of full immunity, if any, is irrelevant. Regardless of when, and for how long, the defendant may have had full immunity from criminal prosecution, those prior periods of immunity do not bar current prosecution for the charges in the Indictment. Any immunity terminated when she left the United States on January 9, 2014. See VCDR, art. 39(2) (diplomat loses diplomatic privileges and immunities at the moment she leaves the country, or on expiration of a reasonable period in which to do so); VCCR, art. 53(3) (consular officer loses consular privileges and immunities at the moment she leaves the country, or on expiration of a reasonable period in which to do so). Upon the termination of such immunity, a former diplomat or consular officer retains residual immunity only with respect to prior acts performed in the exercise of her functions in her official

---

[4] The defendant asserts that her Government actually appointed her to the position at the Permanent Mission of India to the United Nations on December 20, 2013. (Mot. at 6). But the date of her appointment by her own government is irrelevant for immunity purposes. It is the date on which the United Nations' host country – the United States – accredited her that matters for purposes of immunity. See Kuznetsov, 442 F. Supp. 2d at 106 ("diplomatic immunity is premised upon recognition by the receiving state, so no person or government may 'unilaterally assert diplomatic immunity'") (quoting United States v. Lumumba, 741 F.2d 12, 15 (2d Cir. 1984)); see also Agreement Between the United States and the United Nations Regarding the *Headquarters* of the United Nations, G.A. Res. 169 (II), 11 U.N.T.S. 11, No. 147 (1947), 61 Stat. 756, T.I.A.S. No. 1676, *authorized by* S.J.Res. 144, 80th Cong., 1st Sess., Pub.L. 80–357, *set out in* 22 U.S.C. § 287 note (1982) (the "UN Headquarters Agreement"), Section 15. It was not until January 8, 2014, at 5:47 p.m., that the United States did so. See Letter from U.S. Mission to the U.N. to Khobragade, dated Jan. 8, 2014 (attached hereto as Exhibit F)).

capacity. Id. The acts giving rise to the charges in the Indictment were not performed in the defendant's exercise of her functions as a member of the mission or as a consular officer, because the hiring of the Victim was not an official act. (See Kerr Decl. ¶ 4).

This analysis is consistent with that applied in United States v. Guinand, 688 F. Supp. 774 (D.D.C. 1988). In Guinand, the defendant was an employee of a foreign embassy at the time he allegedly entered into a narcotics transaction with an undercover law enforcement agent. Id. at 774. The defendant was indicted on charges of distributing cocaine, and the foreign embassy terminated his employment, giving him a period of time within which to depart the United States. Id. Instead, the defendant remained in the United States, married an American citizen, and obtained permanent resident alien status. Id. The defendant moved to dismiss the indictment under the provisions of Title 22, United States Code, Section 254d, and the court denied the motion, holding that he did not have diplomatic immunity from prosecution because that immunity ceased at the time the defendant's duties at the embassy were terminated. Id. at 776-77. In doing so, the district court relied on, among other things, the Sofaer Declaration, a 1987 version of the State Department Publication, and the 1984 Diplomatic Note to all Missions described above, in finding that the defendant's diplomatic immunity had terminated, and that the United States could proceed with its criminal prosecution against a former diplomat. Id. at 775-76.

The conclusion that Khobragade's motion should be denied is fully supported by the attached declaration of the State Department, which confirms that, under its controlling application of the VCCR and VCDR to the facts of this case, the defendant is subject to prosecution. (See Kerr Decl. ¶ 14). And as the defendant concedes "the courts have generally accepted as conclusive the views of the State Department as to the fact of diplomatic status."

18

Mot. at 11 (citing Abdulaziz v. Dade County, 741 F.2d 1328, 1331 (11th Cir. 1984)); see also In re Baiz, 135 U.S. at 421; Kuznetsov, 442 F. Supp. 2d at 107.  The State Department examined the defendant's immunity in connection with her former consular position and determined that "Dr. Khobragade did not employ [the Victim] in her capacity as Deputy Consul General, and thus did not enjoy immunity from prosecution for the crimes for which she was arrested on December 12, 2013." (Kerr Decl. ¶ 3).  The State Department also determined that the defendant's immunity in connection with her short-lived stint at the Indian Mission is no bar to prosecution:

> From the time of Dr. Khobragade's departure from the United States on January 9, 2014, through the present, Dr. Khobragade enjoys residual diplomatic immunity only for acts she performed in the exercise of her functions as a member of the mission from January 8, 2014 to January 9, 2014. . . .The acts giving rise to charges in the Indictment were not performed in Dr. Khobragade's exercise of her functions as a member of the mission, both because they were performed well before Dr. Khobragade's assignment to the Permanent Mission of India to the United Nations and because the hiring of [the Victim] was not an official act.  Accordingly, Dr. Khobragade does not presently enjoy immunity from prosecution for the crimes with which she is charged in the Indictment.

(Kerr Decl. ¶ 4).  In addition, the State Department deemed the defendant's assertion that she enjoyed diplomatic immunity on December 12, 2013 – the day of her arrest – by virtue of her accreditation to the United Nations as a member of India's delegation to UNGA from August 26, 2013 to December 31, 2013 to be "incorrect." (Kerr Decl. ¶ 5).  The State Department found no basis for the application of Section 11 of the General Convention to this case, (Kerr Decl. ¶ 6), and determined that the documentation she presented in support of her motion to dismiss "fails to establish that she had Section 11 immunity at the time of her arrest, if she had it at any point in time." (Kerr Decl. ¶ 11).  In evaluating the impact of the defendant's immunity status on the prosecution of this case, the State Department's conclusion was unequivocal: "[T]he Department

of State concludes that Dr. Khobragade did not enjoy immunity from arrest or detention at the time of her arrest in this case, and she does not presently enjoy immunity from prosecution for the crimes charged in the Indictment." (Kerr Decl. ¶ 14).[5]

Indeed, the State Department specifically warned the defendant of exactly this when she left the country.  The U.S. Mission informed the Government of India on January 9, 2014, of its request that the defendant depart the United States, and that the defendant would not be permitted to return to the United States except to submit to the jurisdiction of the Court with jurisdiction over the criminal case.  See Diplomatic Note from U.S. Mission to the UN to Permanent Mission of India, dated January 9, 2014 (attached hereto as Exhibit G); see also Diplomatic Note from U.S. Mission to the UN to Permanent Mission of India, dated January 8, 2014 (attached hereto as Exhibit H).  Furthermore, the State Department told the Government of India that the defendant's name would be placed in Visa and Immigration lookout systems to prevent the routine issuance of a visa in the future, and that upon her departure, a warrant might be issued for her arrest.  (Id.)

Accordingly, for all the foregoing reasons, the Government respectfully submits that the defendant's motion to dismiss the Indictment should be denied.

---

[5] Without citing any legal authority supporting the claim, the defendant suggests that the coincidental timing of the Indictment, occurring during the two-day window between her assignment to the United Nations Mission and her departure to India the following day, somehow entitles her to some relief. (Mot. at 5, 7).  But as set forth above and as the State Department has made clear in its Declaration, "Dr. Khobragade's assertions that she possessed full diplomatic immunity at various times in the past, even if true, are no bar to a current prosecution for past conduct now that such immunity has unquestionably terminated, unless the past conduct for which she is being prosecuted was official in nature," which it was not. (Kerr Decl. ¶ 13, 3, 4).  In any event, if that timing were an issue (which it is clearly not), the Government could simply moot the issue by obtaining a superseding indictment or new indictment now.

II.    The Government Does Not Object to the Defendant's Motion to Exonerate Her Bail
       Conditions

       The Government does not object to the defendant's bail being exonerated, as it is now

essentially a moot issue.  Although no particular legal justification exists for exonerating bail

relating to validly pending charges (like the ones here), and although the defendant should not be

entitled to litigate issues of bail while refusing appear before the Court to face the pending

criminal charges, Gorcyca, 2008 WL 4610297, at *2, the defendant cannot at this stage, remain

under meaningful pretrial supervision.  The Government has obtained an arrest warrant for the

defendant, has caused it to be entered into the records of immigration authorities, and has caused

the defendant's name to be placed in Visa and Immigration lookout systems to prevent the

routine issuance of a visa in the future.  Should the defendant return to the United States, she will

then be arrested on the outstanding arrest warrant, presented before the Court, and will be bailed

or detained as the case may be.  At such time, if the Court decides to grant bail, it can set the bail

conditions necessary to ensure the defendant's continued appearance in Court.  Under these

unique circumstances, the Government does not object to exoneration of the defendant's bail

conditions.

CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the Indictment should be denied.  The Government does not object to the defendant's motion to exonerate the defendant's bail conditions.

Dated: New York, New York
       January 31, 2014

                                 Respectfully submitted,

                                 PREET BHARARA
                                 United States Attorney for the
                                 Southern District of New York

                         By:    s/ Kristy J. Greenberg
                                 Kristy J. Greenberg
                                 Amanda Kramer
                                 Assistant United States Attorneys
                                 (212) 637-2469/2478