# Exhibit D

# 2 FAM Exhibit 233.4
# TEXT OF 11-15-89 CIRCULAR DIPLOMATIC NOTE TO CHIEFS OF DIPLOMATIC MISSIONS IN THE UNITED STATES

*(TL:GEN-268;   02-28-1991)*

The Secretary of State presents his compliments to Their Excellencies and Messieurs and Mesdames the Chiefs of Mission and has the honor to refer to previous diplomatic notes from the Department of State on the subject of immunity from the jurisdiction of the United States.

Despite cooperative measures among the Department of State, United States law enforcement authorities, and the addressee missions, there continues to exist a relatively small, but unacceptable, number of members of the foreign diplomatic community in the United States who abuse their immunity from criminal jurisdiction under international law.  The Department has taken a number of reaffirming measures, particularly since enactment of the Diplomatic Relations Act of 1978 and the Foreign Missions Act of 1982, to ensure that the activities of the foreign diplomatic community and other persons who have immunity from criminal jurisdiction by virtue of their official status as representatives of a foreign government or international organization conform with U.S. and applicable provisions of international law.  Nonetheless, the Department of State, sharing the concern of the United States Congress and the public at large, has devised a strengthened, comprehensive program for enforcement of an appropriate system for regulating diplomatic immunities, in a manner that is both effective and consistent with international law.

Under international law and practice persons extended immunity from the jurisdiction of host country laws nonetheless are obligated to respect those laws. As all nations recognize, diplomatic immunity is based upon the principle that duly accredited members of diplomatic missions must be able to pursue their official duties free from harassment and possible intimidation and without impediment to their performance of those duties.  However, immunity is not a license for misconduct.  It is in fact a doctrine intended to benefit the functioning of the mission, not to personally benefit its individual members.  Consequently, the Government of the United States in the first instance looks to chiefs of diplomatic missions, to their counterparts in missions to international organizations, and to the heads of international organizations headquartered or maintaining offices in the United States to counsel members of their staffs, as well as family members who enjoy derivative immunity, on their duty to respect the laws and regulations of this country.  Ultimately, the United States will hold the Chief of Mission and the sending government responsible for the conduct of persons sent to the United States as diplomatic representatives or of others entitled to immunity.  The Department also expects all missions to consider in good faith requests made for

waivers of immunity and, in addition, to take appropriate action against those who may abuse their immunity.

The Department of State reiterates that criminal violations will not be tolerated by the United States Government or the community at large. While the Department will continue to take necessary action as required by international law to safeguard and preserve the immunity of persons allegedly involved in criminal behavior, the Department wishes to communicate the corrective measures consistent with international law that are being taken in cases involving serious criminal conduct, in particular crimes of violence, recurrent offenses of a less serious nature, or other egregious abuses of immunity.

In this regard, the Department wishes to emphasize the following points:

1. The Chiefs of Mission must ensure that the members of their missions and eligible members of their families apply for and receive identity cards issued by the Department of State. Those cards contain not only the official identification of the person but also a statement of the extent of the bearer's immunity. Only persons properly notified to and accepted by the United States Government can be issued documents stating their immunity, and have their status confirmed through the Office of Protocol of the Department of State. In order to ensure that proper notification is given of termination of mission members upon departure, except for those missions subject to a bilateral ceiling restricting the number of official employees at the mission, henceforth notification of new personnel to be accredited must include either information on which person is being replaced at the mission and the date of termination of the predecessor, or a certification that the new person will occupy a new position. Until such time as a revised form reflecting these changes in the regulations is available, such information should be included at the bottom of the appropriate notification form. An example is attached.

2. A diplomatic agent possessing proper identification may not be arrested or detained. It is emphasized, however, that the United States has a duty to protect the safety and welfare of the public, including other diplomats, and to take reasonable steps to prevent the commission of crimes. United States law enforcement authorities therefore have been instructed that, in circumstances where public safety is in imminent danger or it is apparent that a serious crime may otherwise be committed, police authorities may intervene to the extent necessary to halt such activity, even in cases involving diplomatic agents. This includes the power of the police to defend themselves and others from personal harm. At the same time, law enforcement authorities will also take any necessary action to ensure that a diplomatic agent does not bring harm to himself. Mission personnel having a lesser degree of immunity, of course, are also subject to these measures, as well as any other measures consistent with their more limited immunity.

3. Persons with immunity from criminal jurisdiction, consistent with international law, are subject to criminal investigation to the same extent as any other

person residing in the United States, as may be required.  Chiefs of Mission are requested to instruct members of their missions, and the family members of those members, to cooperate fully with such investigations.  United States law enforcement authorities have been instructed to pursue vigorously investigations, to prepare cases carefully and completely, and to document properly each incident of alleged commission of a crime.  These steps are required so that charges against alleged offenders may be pursued as far as possible in the United States judicial system consistent with their immunity.  These steps are also necessary to ensure that investigative reports provide sufficient information to initiate diplomatic measures against an alleged offender.  Such steps may be important also to protect foreign mission personnel alleged to have been involved in criminal misconduct, as investigation of allegations of wrongdoing will determine whether or not they are substantiated.

4. As a matter of general policy, in all cases involving allegations of criminal misconduct, the Department requests the sending government to waive immunity so that allegations of criminal or other misconduct may be adjudicated fully and resolved pursuant to U.S. law.  Where a waiver of immunity is refused, the United States Government normally will require in the case of serious offenses that the alleged offender depart the country, including, where necessary, in the case of such serious offenses by family members, departure of the mission member from whom the family member's immunity derives.  Even where a waiver of immunity has been granted, the Department retains discretion to require the departure of the alleged offender where necessary.  For the guidance of missions, the Department considers serious offenses to include:  (1) any felony, (2) any crime of violence, such as an attack with a firearm or dangerous weapon, or (3) driving under the influence of alcohol or drugs, which causes injury to persons.  In addition, the Department is particularly concerned about those situations where there is a pattern of recurrent, though less serious, offenses, especially those involving drugs or driving without insurance.

5. The Department of State further, as a matter of policy, seeks to prevent the return to the United States of persons entitled to immunity who, as alleged offenders, have been required to leave this country.  The Department will not accept such persons in representative capacities thereafter which would establish any degree of immunity from criminal jurisdiction in their behalf.

6. In all cases involving injury to persons or damage to property, the Department of State intends to pursue vigorously the interests of the aggrieved parties in obtaining prompt restitution by individual offenders or from their governments.

7. The Department wishes to remind the missions that in any case involving criminal activity no immunity exists against the arrest and prosecution of a person formerly entitled to privileges and immunities who returns to the United States following the termination of his or her official duties, unless it can be proved that the crime related to the exercise of official functions.  That defense

is adjudicated by the courts.  The Department recognizes that the threat of prosecution may serve, as a practical matter, to prevent individuals who commit crimes while in privileged status from returning to the United States.  To ensure that such individuals do not return without appropriate review by United States authorities, the Department reaffirms its requirement that the sending government forward the passport of the alleged offender (and of family members in appropriate cases) to the Department before he or she departs the United States so that the visa may be revoked and the form I-94 returned to the Immigration and Naturalization Service.  Should the alleged offender leave the United States before the visa is canceled, the Department reserves the right to refuse a replacement for the offender (or his or her principal in the case of a crime committed by a dependent) on the mission staff, to the extent permitted under international obligations, until the outstanding visa is revoked.

8. The Department of State has measures already in place to prevent persons, for whom there is reason to believe that they have committed a serious criminal offense, from reentering the United States in a diplomatic or consular capacity after having been required to leave this country.  These measures include entering data on the alleged offender in the Department's Automated Visa Lookout System.  This information is shared with the Immigration and Naturalization Service and used by the INS at ports of entry into the United States.  Also, as already noted, the Department requires cancellation of existing visas when a foreign diplomat leaves the United States as a result of alleged commission of a criminal offense.

9. In addition, the Department of State is seeking legislation which would add a new category of ineligibility for visas and for admission to the United States.  This new provision would exclude from the United States persons for whom there is reason to believe that he or she committed a serious criminal offense in the United States, for whom immunity from criminal jurisdiction was exercised, and who left the United States as a con-sequence, thus preventing adjudication of guilt or innocence in United States courts.

10. The Department of State defines "member of the family" for purposes of immunity from criminal jurisdiction as a person who is in one of the following relationships to an official representative of a foreign government or another person who has immunity from criminal jurisdiction by virtue of his or her official status:

    (a) the spouse of such representative or other person and his or her unmarried children under 21 years of age, who are not members of some other household, and who reside exclusively in the principal's household, if the spouse or children are not nationals (in the case of a diplomatic agent) or (in the case of other representatives) nationals or permanent residents of the United States;

    (b) the unmarried children of such representative or other person who are under 23 years of age and attending an institution of higher education on a

> full-time basis, if they are not nationals (in the case of a diplomatic agent) or (in the case of other representatives) nationals or permanent residents of the United States; and
>
> (c) under exceptional circumstances and with the express advance approval of the Department of State, other persons who are not members of some other household, who reside exclusively in the principal's household, and who are recognized by the sending State as members of the family forming part of the household.

The Department of State also takes this opportunity to remind the Chiefs of Mission of previous circular notes on the policies and procedures affecting their missions and staff, particularly the notes of September 21, 1987, and March 21, 1984, regarding the conduct of diplomatic agents in the United States; the notes of April 1, 1986, and May 8, 1985, regarding motor vehicle requirements; the notes of August 17, 1987, and September 9, 1985, regarding traffic fines; the note of July 3, 1985, regarding operation of motor vehicles while under the influence of drugs or alcohol; the note of July 5, 1984, regarding registration of motor vehicles; the note of March 17, 1987, regarding liability insurance; the notes of December 19, 1988, May 21, 1986, and February 3, 1983, concerning the possession and carrying of firearms; and the note of October 24, 1986, regarding identification cards and updating of such cards.  (Copies of these notes are enclosed for the convenience of the missions.)

The Department of State reminds the Chiefs of Mission that, as in the case of personal immunity of individuals, the inviolability of diplomatic and consular pouches is based upon the need of missions to have free communication with their governments and missions in other countries or elsewhere in the United States.  The Department will not tolerate abuses of this inviolability to bring into the United States or transport within the United States illegal substances, such as narcotics, explosives, firearms and other material illegal under United States law and regulation.  The Government of the United States will take all steps consistent with international law to detect, prevent, and punish such abuse.

In conclusion, the Department of State urges the Chiefs of Mission to ensure that members of their missions, and their dependents, pay their just debts, and that all necessary and appropriate steps are taken by waiver of immunity, insurance, or otherwise to discharge obligations arising from the presence and activities of the missions, their members and dependents.  The Department strongly recommends that the missions and their members obtain liability insurance, in addition to the level of motor vehicle insurance already required by the U.S. Government, to cover property losses or injury arising out of their activities.

Where the Department learns that missions or their members have failed to discharge legitimate debts within a reasonable time, or are otherwise financially liable for activities undertaken in the United States, upon request, the Department will intervene to secure payment.  In particular, it is the Department's practice to assist in resolving outstanding debts of mission members where the complainant

notifies the Department of the matter in writing, and can produce satisfactory evidence 1) that a debt or civil liability is owed, 2) that the matter has been brought to the attention of the mission member concerned and to the head of the mission, without resolution for an unreasonable period (pending without resolution for six months or more), and 3) that immunity would preclude judicial or administrative action.  The Department must advise the Chiefs of Mission that reliance on immunity to evade a financial obligation under law could call into question a mission member's continued acceptability in the United States.  In addition, the departure of a mission member without settling outstanding financial liabilities could affect the Department's willingness to accept a replacement, and could cause the United States to advise prospective creditors of the financial unreliability of the mission or its members.

The Department will closely study the manner in which the respective missions discharge this responsibility and will take those diplomatic measures which will be both effective and consistent with international law.

Enclosures:

1. Circular Notes of September 21, 1987, March 21, 1984, April 1, 1986, May 8, 1985, August 17, 1987, September 9, 1985, July 3, 1985, July 5, 1984, March 17, 1987, December 19, 1988, May 21, 1986, February 3, 1983, and October 24, 1986.

2. Examples of Notification Forms.

   Department of State,
       Washington, November 15, 1989.