Exhibit E

P890118-0823                    Return to Agent, L

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA          :

          v.                      :          Criminal No. 88-201 (OG)

JULIO J. GUINAND                  :


DECLARATION OF ABRAHAM D. SOFAER


I, Abraham D. Sofaer, hereby declare pursuant to 28 U.S.C.
Section 1746 as follows:


1.  I am the Legal Adviser of the Department of State.  I
have served in this capacity since June 10, 1985.  I submit
this declaration to advise the court of the interpretation of
the United States Government of the Vienna Convention on
Diplomatic Relations, particularly with reference to the
termination of privileges and immunities enjoyed by members of
diplomatic missions.  My declaration is based on my personal
knowledge and on information provided to me in my official
capacity.

- 2 -

2.  My responsibilities as Legal Adviser include the formulation and implementation of the interpretation of international law and treaties by the United States Government, including those that grant or relate to privileges and immunities enjoyed by foreign government officials in the United States.

3.  The privileges and immunities of members of diplomatic missions in the United States are established in the Vienna Convention on Diplomatic Relations, April 18, 1961, T.I.A.S. No. 7502, 23 U.S.T. 3227, 500 U.N.T.S. 95 ("VCDR").  This treaty entered into force for the United States on December 13, 1972.  In 1978, Congress passed the Diplomatic Relations Act, 22 U.S.C. sections 254a-254e, which repealed all prior U.S. statutes on diplomatic privileges and immunities, establishing the Vienna Convention on Diplomatic Relations as the sole law of the United States on the subject of diplomatic privileges and immunities.

4.  Article 39 of the VCDR describes the beginning and termination of diplomatic privileges and immunities. Diplomatic immunities commence "from the moment [the diplomat] enters the territory of the receiving state ... or ... from the moment when his appointment is notified to the Ministry of Foreign Affairs."  Privileges and immunities terminate "when

- 3 -

the functions of a person enjoying privileges and immunities
have come to an end ... at the moment when he leaves the
country, or on expiry of a reasonable period in which to do so,
but shall subsist until that time, even in the case of armed
conflict.  However with respect to acts performed by such a
person in the exercise of his functions as a member of the
mission, immunity shall continue to subsist."


5.  The United States Government has consistently
interpreted Article 39 of the VCDR to permit the exercise of
U.S. jurisdiction over persons whose status as members of the
diplomatic mission has been terminated for acts they committed
during the period in which they enjoyed privileges and
immunities, except for acts performed in the exercise of the
functions as a member of the mission.  (Article 3 of the VCDR
lists the permissible functions of a diplomatic mission.)  The
Department of State has publicly stated this interpretation to
U.S. law enforcement authorities, to Congress, and to members
of foreign diplomatic missions in the United States.

Thus, an official State Department publication, intended to
provide guidance to law enforcement authorities on the various
categories of foreign mission personnel and the privileges and
immunities to which they are entitled, states:

- 4 -

Criminal immunity, to the extent that it is enjoyed by
a particular individual and to the extent that it is
not waived by the sending State concerned, precludes
the exercise by courts of the United States of
jurisdiction over alleged criminal activity by such
persons, whether such activity occurred during or
prior to the period during which such person enjoys
criminal immunity in the United States.  The
jurisdictional bar, however, is not a perpetual
benefit for such person.  With the exception of
immunity for official acts (which subsists
indefinitely), criminal immunity expires upon the
termination of the diplomatic or consular tour of the
individual enjoying such immunity, including a
reasonable period of time for such person to depart
the U.S. territory.  Thereafter, if the law
enforcement authorities of the United States can
obtain personal jurisdiction over a person alleged to
have committed criminal acts in the United States,
normal prosecution may go forward.

United States Department of State, Guidance for Law Enforcement

Officers: Personal Rights and Immunities of Foreign Diplomatic

and Consular Personnel, Department of State Publication 9533 at

18 (1987).  A copy of this publication is attached hereto as

Exhibit A.

The Chief of Protocol of the United States, in testimony to

Congress, described this publication and stated: "we have

pointed out the necessity for careful and complete police work

at the time of the incident in order to lay the basis for

possible future prosecution when immunity ceases to exist. ...

After the offender leaves the United States, the existence of

an outstanding arrest warrant may be entered into the records

of the immigration authorities."  United States Department of

- 5 -

State, "Diplomatic Immunity and U.S. interests," Current Policy No. 993, at 3. A copy of this statement is attached hereto as Exhibit B.

The Department of State has also stated its interpretation to the diplomatic community in the United States through two diplomatic notes circulated to all diplomatic missions. (Diplomatic notes are formal communications from the Department of State to diplomatic missions.) On March 21, 1984, the Secretary of State declared:

> On the termination of criminal immunity, the bar to prosecution in the United States would be removed and any serious crime would remain as a matter of record. If a person formerly entitled to privileges and immunities returned to this country and continued to be suspected of a crime, no bar would exist to arresting and prosecuting him or her in the normal manner for a serious crime allegedly committed during the period in which he or she enjoyed immunity. This would be the case unless the crime related to the exercise of official functions, or the statute of limitations for that crime had not imposed a permanent bar to prosecution."

Circular Diplomatic Note, March 21, 1984, at 2-3. A copy of this diplomatic note is attached hereto as Exhibit C. This interpretation was restated in another circular note in 1987 by the Chief of Protocol: "The Department wishes to remind the missions that in any case involving criminal activity no ban exists on the arrest and prosecution of a person formerly entitled to privileges and immunities who returns to the United States, unless it can be proved that the crime related to the

- 6 -

exercise of official functions." Circular Diplomatic Note,
September 21, 1967, at 2. A copy of this diplomatic note is
attached hereto as Exhibit D.

These examples discuss the rules regarding termination of
immunity and the ability of the receiving State to prosecute
former diplomats in terms of departure from the United States
because almost all persons in these circumstances would rather
leave than face criminal prosecution in the U.S. Nonetheless,
the rules on termination of immunity are exactly the same
whether the person involved leaves or remains in the United
States following the termination of his or her diplomatic
status: that person is subject to prosecution for criminal acts
committed while in diplomatic status, except for acts committed
in the course of official functions.

Finally, the United States Government has not, and, I
believe, would not assert immunity from criminal prosecution
for one of its diplomatic personnel in another State, once that
person's tour of duty had ended and a reasonable time for that
person to depart had elapsed, unless that criminal prosecution
was for acts committed in the course of that person's official
functions. Moreover, I believe such an assertion would not be
accepted by the courts of another State, because of the
international interpretation and practice of other States
regarding the termination of diplomatic immunity.

202 261 8589 TO 97367820          P.09/12

- 7 -

6.   The United States' Government's interpretation of Article 39(2) of the VCDR is consistent with the underlying purposes of the treaty.  As stated in its preamble, "the purpose of privileges and immunities is not to benefit individuals but to ensure the efficient performance of the functions of diplomatic missions as representing States."  The primary basis is that foreign representatives may carry out their duties effectively only if they are accorded a certain degree of insulation from the application of the laws of the host country.  Thus, these representatives need protection _while_ they are serving in their positions so that they may fully carry out their functions, without fear of interference or harassment by the receiving State.  Once their tour of duty has ended, however, they no longer require this protection because they are no longer exercising important functions which must be protected in order to maintain the orderly conduct of foreign relations between their State and the receiving State. Thus, the purpose of immunity is not violated by permitting a prosecution to go forward when the former diplomat is no longer employed at the mission, except where a prosecution involves that former diplomat's official functions.

7.   In addition, Article 41 of the VCDR specifically imposes a duty to respect the laws and regulations of the receiving State on all personnel of a diplomatic mission who

202 261 8589 TO 97367620

- 9 -

enjoy privileges and immunities.  Thus, as spelled out in the
Department of State's guidance for law enforcement officers:
"frequently (and erroneously), immunity is understood to mean
pardon, total exoneration, or total release from the
responsibility to comply with the law.  In actuality, immunity
is simply a legal barrier which precludes U.S. courts from
exercising jurisdiction over cases against persons who enjoy it
and in no way releases such persons from the duty, embodied in
international law, to respect the law and regulations of the
United States."  Department of State, <u>Guidance for Law
Enforcement Officers</u>, at 17 (Exhibit A).

    8.  The United States Government's interpretation of the
termination of immunity under the VDCR is, to the best of my
knowledge, consistent with practice of other sovereign states,
including the almost 150 states which are party to the Vienna
Convention.  United States Department of State, <u>Treaties in
Force</u>, Department of State Publication 9433, at 240 (1987).
<u>See</u> E. Denza, <u>Diplomatic Law</u> at 247-49 (1976).

    9.  I have been advised that a one count indictment was
returned in this case on June 2, 1988, charging Julio J.
Guinand with violating 21 U.S.C. section 841(a), which
prohibits the distribution of controlled substances.  The
certification of Mr. Guinand's status prepared by the Office of

202 261 8589 TO 97367620                    P.11/12

- 9 -

Protocol of the Department of State certifies that Mr. Guinand
was notified to the Department of State by the Embassy of Peru
as a member of its administrative and technical staff on
January 1, 1981, and was terminated by the Embassy of Peru on
December 31, 1987. He was accorded 30 days as a reasonable
time in which to leave the United States. Upon Mr. Guinand's
failure to depart the United States by that date, he was
indicted. Mr. Guinand no longer has diplomatic status and is
no longer entitled to immunity for any act committed during the
period he held diplomatic status, except for acts taken in the
exercise of his functions. It is clear that the act of
distributing controlled substances is not an official
diplomatic function.

9. It is my view, in my official capacity as Legal Adviser
of the Department of State, that finding that the defendant in
this case continues to enjoy diplomatic immunity for acts
charged in the indictment would have significant and adverse
consequences. The VCDR (Article 9) provides that the host
State, here the U.S., can declare a diplomat persona non
grata. The sending State must then either remove the diplomat
or terminate his functions. Thus, the U.S. public is protected
from further harm. Either the diplomat may be removed from the
U.S. or the diplomat may be prosecuted. Permitting a former
diplomat to remain in the U.S. after he or she has committed

- 10 -

criminal acts unrelated to official functions, while continuing
to bar prosecution of that person, would remove the ability of
a State to protect itself from further harm, without serving
any interests of the sending State for the benefit of which
immunity is accorded.

I declare under penalty of perjury under the laws of the
United States that the foregoing is true and correct.

Executed on _July 5, 1988_

_Abraham D. Sofaer_
Abraham D. Sofaer