UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                               :

UNITED STATES OF AMERICA

                                               :

        -v-                                      14 CR 008 (SAS)

                                               :

DEVYANI KHOBRAGADE

                                             :

               Defendant.

                                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

### DEFENDANT'S REPLY TO THE PROSECUTION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT

Defendant, Dr. Devyani Khobragade, by and through her undersigned counsel, hereby submits her Reply to the Prosecution's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Indictment, and in support hereof states as follows:

### INTRODUCTION

The prosecution goes to great lengths in its opposition to make inapposite distinctions between the immunity conferred upon consular officials versus diplomats under the respective Vienna Conventions as the ostensible basis to deny the requested relief. Such distinctions are a clear effort to obfuscate, are irrelevant and do not assist the Court in resolving this matter.

The pertinent facts are:

    a.   Dr. Khobragade was given full diplomatic status by the Department of State at 5:47pm on January 8, 2014;

    b.   The Grand Jury returned the instant indictment on January 9th *after* she was already cloaked with diplomatic immunity;

    c.   Dr. Khobragade was present inside the United States at the time the indictment

1

was returned by the Grand Jury on January 9, 2014; and

d. The State Department's recognition of her diplomatic position with the Permanent Mission of India to the United Nations conferred diplomatic immunity upon her requiring that the entire "proceeding or action" be dismissed. *See, 22 USC § 254(d); Abdulaziz v. Dade County,* 741 F.2d 1328, 1329-30 ("the diplomatic immunity flowing from that status serves as a defense to suits already commenced") (emphasis added); *U.S. State Department: Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities at 4* ("Criminal immunity precludes the exercise of jurisdiction by the courts over an individual ***whether the incident occurred prior to or during*** the period in which such immunity exists." *See, Gov't Opp. Exhibit B* (emphasis added).

## **ARGUMENT IN REPLY**

### **TIME LINE OF EVENTS**

It is important to place the relevant facts and sequence of events into a time line that demonstrates that because Dr. Khobragade was immune from prosecution at the time the indictment was returned this case should have been dismissed on January 9, 2014 when the letter motion addressed to Magistrate Netburn (attached hereto as *Exhibit 2*) was delivered to this Court and served on the prosecution.

Dr. Khobragade was appointed as a Deputy Consul General of India on October 26, 2013. *See, Gov't Opp. at pg. 2.* Contrary to the prosecution's erroneous, self-serving and foundationless unilateral proclamation that her appointment terminated on January 8, 2014, she, in fact, continued in that capacity through January 9, 2014, at approximately 8:30 P.M., when she was obligated by United States of America to depart the country. *See, Declaration of Kal*

*Raustiala,* attached hereto as *Exhibit 3.* On August 26, 2013, she was appointed as a Special Advisor to the United Nations. That appointment continued, unabated, through December 31, 2013. *See, January 9, 2014 Memorandum of Law In Support of Motion to Dismiss, Exhibit 1 and see Exhibits 4 and 5, attached hereto as Exhibit 2 and discussed more fully below.* Dr. Khobragade was arrested on December 12, 2013, handcuffed, strip searched, and then brought before Magistrate Netburn. *See, January 9, 2014 Memorandum of Law In Support of Motion to Dismiss at pg. 1.* While she was not formally arraigned on the Complaint, she was nonetheless required to post bail and adhere to conditions of pretrial release. *Id.* at 3. An objection was raised on that day by Defense Counsel as to the propriety of the arrest based upon claims of diplomatic immunity. *Id.* at 3. The matter was adjourned for 30 days pending indictment or possible disposition. *Id.* at 3.

On December 18, 2013, Dr. Khobragade was transferred from her position as Deputy Consul General to the position of Counselor at the Permanent Mission of India (PMI) to the U.N., a position which carries with it full diplomatic immunity from prosecution. The fact of her transfer to the PMI is demonstrated by the issuance of her U.N. credentials on December 20, 2013 as per the U.N. Protocol and Liaison Service (PLS). *See, "Proof of Issuance" attached hereto as Exhibit 1.*

On January 8, 2014, after significant delay, the U.S. State Department recognized and fully credentialed Dr. Khobragade as a foreign diplomat notifying her that she was entitled to the privileges and immunities corresponding to her position. *January 9, 2014 Memorandum of Law In Support of Motion to Dismiss at pg. 3 and Exhibit 2, attached thereto.*

As a result of the State Department's recognition and accreditation of Dr. Khobragade's diplomatic status, on the morning of January 9, 2014 Defense Counsel prepared a letter motion,

consistent with *22 U.S.C. §254(d),* addressed to Magistrate Netburn who was then handling this action, seeking dismissal of the proceeding pursuant to *22 U.S.C. § 254(d)* due to her diplomatic status and corresponding immunity.  *See, Exhibit 2, attached hereto*.

Upon arriving at Magistrate Netburn's courtroom, in the early afternoon of January 9, 2014, the prosecution informed the undersigned that in the morning of January 9, 2014, ***after*** Dr. Khobragade's diplomatic status had been recognized by the State Department, the prosecution sought and obtained the instant indictment from the Grand Jury.  Consequently, Magistrate Netburn was divested of jurisdiction over the matter and this case was assigned to this Court.

The prosecution and Defense Counsel appeared before Your Honor on the afternoon of January 9, 2014 with regard to the indictment returned just hours before.  The undersigned hand-served this Court and the prosecution with the letter Motion Seeking Dismissal, attached hereto as Exhibit 2,  which was originally addressed to Magistrate Netburn, but not delivered to her because we learned that the Magistrate had been divested of jurisdiction upon the return and filing of the indictment just hours before.  Because of her diplomatic status and the official request of the United States to leave the country, Dr. Khobragade was not present and was not arraigned on the indictment. *Id.* at 4.

This Court did not rule upon the letter motion on January 9, 2014.  Issues related to Dr. Khobragade's bail were discussed and more briefing was requested.

Dr. Khobragade returned to India at approximately 8:30 P.M. on the evening of January 9, 2014.  On January 14, 2014, Defense Counsel filed another set of formal moving papers to dismiss the proceeding for many of the same reasons as those previously asserted in the January 9, 2014 letter motion and addressed the additional bail related issues discussed on that date.

It is acknowledged that the prosecution is not forever precluded from prosecuting the

defendant.  Our application is only that *this* proceeding must be dismissed.  The instant indictment was returned and filed with the Court prior to Dr. Khobragade's departure when she was still recognized as a diplomat and still imbued with diplomatic immunity.  The prosecution could not then and cannot now proceed further on that invalid instrument.  The prosecution is clearly legally able to seek a new indictment at this time or at some point in the future now that Dr. Khobragade no longer possesses such diplomatic status and immunity, but it may not proceed further with *this* case pursuant to *22 U.S.C. § 254(d)*.

Here, the sequence of events to be examined for resolution of the motion is critical.  The question is not whether the prosecution may bring a case against Dr. Khobragade now that she is a "former" diplomat: it can.  But, it cannot do so based upon an indictment that was obtained while she was an active diplomat cloaked in immunity, as she was on January 9, 2014 when the Grand Jury voted a true bill.  So, the factual analysis for the Court to resolve is at what point Dr. Khobragade's diplomatic status was revoked such that she was converted to "former" diplomat status.

The immutable fact is that she was a diplomat entitled to immunity from prosecution who did not leave the United States until approximately 8:30 P.M. on the evening of January 9, 2014, which was several hours after the indictment was returned and filed with the Court.  The timing of the return and filing of the indictment occurring as it did *prior* to her departure is irrefutable as the Court modified Dr. Khobragade's bail conditions earlier in the day so she could return to India.

This sequence of events distinguishes this case from that of *U.S. v. Gorcyrca,* 2008 WL 4610297 (E.D.N.Y. 10/16/2008), relied upon in error by the prosecution.  There, the District Court held that the defendant's motions to dismiss an indictment were barred by the

"disentitlement doctrine" where the defendant was indicted abroad.  The Court held that the defendant's motion could not be favorably entertained because he did not return to the U.S. prior to invoking the authority of the Court while simultaneously avoiding it.

Here, as the Court is aware, the defendant was *present* in New York when the indictment was returned and when her Counsel made proper application pursuant to *22 U.S.C. §254(d)* to dismiss the proceeding based on lack of jurisdiction due to diplomatic immunity.  She was not willfully evading the court proceeding.  Rather, she had been *required* by the United States to leave and return to India.  Until she did so, she remained cloaked with immunity.  Arrangements were being made to have her depart that evening once the Court modified her bail conditions so that she would not be charged with any claim of bail jumping.  Dr. Khobragade did not become a "former" diplomat until that evening at approximately 8:30pm when her airplane departed American airspace.

For all intents and purposes, she was a diplomat present in the receiving country and entitled to full diplomatic privileges and immunities when these events transpired.  As such, she could not have been arraigned by Your Honor on the indictment even if she had appeared in Court because she was still an active diplomat entitled to immunity from criminal prosecution. In accordance with Article 31 of the Vienna Convention on Diplomatic Relations, *22 U.S.C. §254(d), Abdullaziz,* and *Brzak, supra*, the case was required to be dismissed on January 9, 2014 because she did not become a "former" diplomat until later that evening.

**DR. KHOBRAGADE HAD FULL DIPLOMATIC IMMUNITY UNDER ART. 31
OF THE VIENNA CONVENTION ON DIPLOMATIC RELATIONS ("VCDR")
AT THE TIME OF HER INDICTMENT, ON JANUARY 9, 2014. THEREFORE
THIS CASE MUST BE DISMISSED PURSUANT TO *22 U.S.C. § 254(d)*.**

The proceeding must be dismissed for lack of jurisdiction because at the time the

indictment was issued, the United States did not have criminal jurisdiction over Dr. Khobragade.

*See, Declaration of Kal Raustiala, attached hereto as Exhibit 3*.  Mr. Raustiala, an expert on the

application of privileges and immunities to diplomats, makes it quite clear that, on January 9,

2014, when the first application to dismiss this proceeding was submitted, this Court did not

have criminal jurisdiction over Dr. Khobragade.  Therefore this proceeding, on that date, should

have been dismissed.  It is undisputed that on January 8, 2014, the U.S. Department of State

acknowledged Dr. Khobragade's appointment as Counselor to the Permanent Mission of India to

the U.N., and certified her with "immunity from the criminal jurisdiction of the United

States…consistent with the Vienna Convention on Diplomatic Relations."  *January 9, 2014*

*Memorandum of Law In Support of Motion to Dismiss, Exhibit 2*, *Credentialing Letter from the*

*United States to Dr. Khobragade*; *Gov't. Opp. at pg. 4*.  The following day, while Dr.

Khobragade was still cloaked with immunity from this Court's jurisdiction, the prosecution

convened a grand jury, and an indictment against Dr. Khobragade was issued.  *Govt. Opp. at pg.*

*4.*  Thus, on January 9, 2014, when Dr. Khobragade's original motion to dismiss was presented

to the Court and served on the prosecution this case should have been dismissed.  *See, Brzak v.*

*United Nations*, 597 F.3d 107, 113 (2d Cir.), *cert. denied,  –U.S.–,* 131 S.Ct. 151, 178 L.Ed.2d

243 (2010) ("...current diplomatic envoys enjoy absolute immunity from civil and criminal

process."); *see also, Tachiona v. Mugabe,* 386 F.3d 205, 216 (2nd Cir. 2004); *Montuyo v. Chedid,*

779 F.Supp.2d 60, 63 (D.C. Dist. 2011*); Gonzales Paredes v. Vila*, 479 F.Supp.2d 187, 191

(D.D.C. 2007*); Sabbithi v. Al Saleh*, 605 F.Supp.2d 122,130 (D.D.C. 2009), *vacated in part on*

*other grounds,* No. 07 Civ. 115 (D.D.C. March 8, 2011).

The indictment must be dismissed because the immunity bestowed upon her applied *retroactively*. *See, Abdulaziz v. Dade County*, 741 F.2d 1328, 1329-30 ("the diplomatic immunity flowing from that status ***serves as a defense to suits already commenced***") (emphasis added)*; U.S. State Department: Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities at 4* ("Criminal immunity precludes the exercise of jurisdiction by the courts over an individual ***whether the incident occurred prior to or during*** the period in which such immunity exists.")[1] (emphasis added)*.* Consequently, because the indictment was obtained on the afternoon of January 9, 2014, while Dr. Khobragade was present in the United States and continued to be a diplomatic official, the proceeding be dismissed due to her immunity. *See, Abdulazziz, supra.* Such a result comports with the explicit and mandatory dictates of *22 U.S.C. §254(d)* which instruct that "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations...***shall be dismissed***." (emphasis added).

Indisputably, the State Department knowingly and intentionally conferred such diplomatic privileges and immunities upon Dr. Khobragade as mandated by Article 31 of the Vienna Convention on Diplomatic Relations. At the time that the indictment was obtained and filed in the early afternoon hours of January 9, 2014, Dr. Khobragade was present in the United States and continued to be cloaked in such immunity. *22 U.S.C. §254(d)* and the cases cited above mandate that ***any*** proceeding or action brought against a diplomat while cloaked in immunity ***must*** be dismissed.

The prosecution's reliance upon *U.S. v. Guinand*, 688 F.Supp. 774 (D.D.C. 1988) is equally misplaced. There, the defendant was an employee of the Peruvian embassy who was

---

[1]  http://www.state.gov/documents/organization/150546.pdf and see Gov't Opp. Exhibit B

indicted for cocaine related charges *after* he was given a reasonable amount of time to leave the country but did not.  There, the Court stated:

> The issue before the Court is whether the immunity with which defendant was cloaked at the time these acts allegedly were committed continues indefinitely or whether that immunity ceases at the time his duties at the Embassy were terminated and he was given a reasonable time within which to depart.

The Court found that the defendant could be prosecuted for acts committed during the period in which he had diplomatic status and immunity *but only after* such status and immunity were terminated.  Here, the outcome determinative fact that should govern the Court's decision is that Dr. Khobragade's diplomatic status and immunity was still intact when the indictment was returned by the Grand Jury.  That fact is fatal to the prosecution's opposition: all the cases relied upon by it share the common denominator that the defendant was a "former" diplomat at the point that the civil or criminal action was commenced and personal jurisdiction could be obtained over him.  In this case, the proceeding sought to be dismissed was commenced by an indictment obtained on January 9, 2014 when Dr. Khobragade was still cloaked with immunity.

## DISMISSAL IS REQUIRED EVEN AFTER TERMINATION FROM A DIPLOMATIC POST

When a diplomat is cloaked with immunity at the commencement of an action, that action must be dismissed *even if the diplomat is later terminated from the diplomatic post*.  *Fun v. Pulgar*, CIV.A. 13-3679 SRC, 2014 WL 197901 (D.N.J. Jan. 14, 2014) (dismissing the complaint because "[d]espite termination of Defendants' status as diplomats, diplomatic immunity validly applied at commencement of the suit and service of the initial Complaint"); *see also Swarna v. Al–Awadi*, 607 F.Supp.2d 509, 514 (S.D.N.Y.2009) (explaining that initial suit was properly dismissed for lack of jurisdiction despite the fact that the diplomat had left his post because service was effected prior to the diplomat's departure); *Abdulaziz v. Metropolitan Dade*

*Cty.,* 741 F.2d 1328, 1329–30 (11th Cir.1984) (affirming dismissal of action on basis of proof of diplomatic immunity at time of commencement).   Indeed, *22 U.S.C. § 254(d),* mandates the very same result.   Congress has mandated that "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations [. . .] **shall** be dismissed."   *22. U.S.C. § 252(d).* (emphasis added)

The prosecution argues that Dr. Khobragade's motion should be denied because currently she no longer holds the post of Consular to the Permanent Mission of India for the UN.   In essence, the prosecution argues that a diplomat cannot be heard to complain about illegal arrests, searches, indictments or other criminal proceedings that took place while the diplomat enjoyed full criminal immunity if ***on the day the matter is actually heard by the Court*** the diplomat's post has terminated.   But there is simply no authority for such an obviously wrongheaded proposition.[2]   The prosecution's position flies in the face of established authority, and would lead to an absurd interpretation of the VCDR that is contrary to well-settled international law on this subject.

In *The Paquete Habana,* 175 US 677, 700 (1900), the United States Supreme Court advised that "[i]nternational law is part of our law, and must be ascertained and administered [...] as often as questions of right depending upon it are duly presented for their determination." On this point, the International Court of Justice (the "ICJ") has also issued an opinion on whether an arrest warrant against a ***former*** diplomatic agent should be quashed under principles of diplomatic immunity.   *Dem. Rep. Congo v. Belgium,* 2002 I.C.J. 3, 2002 WL 32912040 (Feb. 14, 2000) related to a Belgian court which issued an arrest warrant charging the Congo's foreign minister in absentia, Mr. Abdulaye Yerodia Ndombasi, with grave breaches of the 1949 Geneva

---

[2] And, in any event, the initial application to dismiss was made on January 9, 2014.

Conventions and their 1977 Protocols during a civil war in Congo in 1998. The arrest warrant was transmitted to the International Criminal Police Organization ("Interpol") and circulated internationally. In response, Congo asked the ICJ to quash the arrest warrant because it violated the foreign minister's diplomatic immunity. At the time the ICJ issued its opinion, Mr. Yerodia no longer held the post of Minister of Foreign Affairs. The ICJ concluded that "the issue of the warrant constituted a violation of an obligation of Belgium toward the Congo, in that it failed to respect of the immunity of that Minister and, more particularly, infringed the immunity from criminal jurisdiction and the inviolability *then* enjoyed by him under international law." Id. at 29 (emphasis added). More importantly, the ICJ held that "[t]he warrant is still extant, and remains unlawful, *notwithstanding the fact that Mr. Yerodia has ceased to be Minister for Foreign Affairs.* The Court accordingly considers that Belgium must, by means of its own choosing, cancel the warrant in question and so inform the authorities to whom it was widely circulated." *Id*. at 32 (emphasis added).

        Thus, the authority establishes that even when a defendant is outside of the court's jurisdiction pursuant to a grant of diplomatic immunity, any action, arrest or other proceeding commenced *during the period of that immunity* must be dismissed. *See 22 U.S.C. § 254(d)*; *Fun,* 2014 WL 197901; *Swarna*, 607 F.Supp.2d at 514; *Abdulaziz*, 741 F.2d at 1329–30; *Dem. Rep. Congo,* 2002 I.C.J. at 32. The indictment issued on January 9, 2014, was part of  a proceeding brought against Dr. Khobragade during the period in which she possessed full diplomatic immunity, as certified by the U.S. Department of State. As a result, and pursuant to *22 U.S.C. § 254(d)* that proceeding must be dismissed.

11

<u>**DR. KHOBRAGADE HAD FULL DIPLOMATIC IMMUNITY UNDER SECTION 11 OF THE U.N. CONVENTION AT THE TIME OF HER ARREST, ON DECEMBER 12, 2013.**</u>

As explained in our initial Motion to Dismiss submitted on January 9, 2014 and subsequently in our renewed Motion to Dismiss filed on January 14, 2014, Dr. Khobragade had full immunity from arrest and prosecution on the day she was arrested, December 12, 2013.  This was so due to her having been credentialed as an advisor to the U.N. for the full General Assembly term which ran from August 26, 2013 through December 31, 2013.  The prosecution took issue with the official U.N. document which was attached as Exhibit 1 to both our January 9 and January 14, 2014 Motions to Dismiss.  They suggested that, in some way, that document was inconclusive of the fact of her having been fully credentialed by the U.N. for the entire General Assembly period.  There should be no doubt that in fact, Dr. Khobragade was fully credentialed by the U.N. on August 26, 2013 and through December 31, 2013.  To eliminate any vestige of doubt, we attach hereto as *Exhibit 4* the email from the U.N. Protocol office to the Indian Protocol office confirming that Dr. Khobragade was in fact approved as an advisor to the U.N. for the entire regular session of the U.N.  Also attached as *Exhibit 5* is a computer screen shot of the U.N. Protocol and Liaison Service listing of Dr. Khobragade as having been accredited as an advisor to the U.N. for the entire General Assembly meeting.

There is no credible suggestion that Dr. Khobragade was ***not*** an Advisor to the U.N. on December 12, 2013.  Indeed, in the absence of any proof to the contrary we are left with uncontroverted evidence, because it is the truth, that on that date she was subject to the protection of Article IV, Section 11 of the Convention of Privileges and Immunities of the United Nations (*See, Exhibit 6*, *attached hereto*) which holds in relevant part that credentialed Advisors, such as Dr. Khobragade are "immune from personal arrest or detention."  But that is

not just the opinion of the undersigned.  No less an authority than the Assistant Secretary-General for Legal Affairs of the U.N., instructs that Advisors are to be accorded all of the privileges and immunities as are detailed in Article IV, Section 11 of the Convention.  *See, Exhibit 7, attached hereto.*

From the foregoing, it cannot be seriously argued that Dr. Khobragade did not enjoy immunity from arrest on December 12, 213.  Her arrest, as explained in our previous motions, was illegal and should never have occurred.  The proceeding which flowed from that illegal arrest was likewise tainted and must, for this additional reason be dismissed.

## ALTERNATIVELY, EVEN IF DR. KHOBRAGADE ENJOYED ONLY VCCR "OFFICIAL ACTS" IMMUNITY, EVEN THAT IMMUNITY PRECLUDED HER ARREST AND INDICTMENT FOR THE ACTS ALLEGED BY THE PROSECUTION.

It is undisputed that Dr. Khobragade held the position of Deputy Consul General of the Indian Consulate in New York on the day of her arrest.  Pursuant only to her position as Deputy Consul General, Dr. Khobragade was also afforded certain privileges and immunities under the Vienna Convention on Consular Relations (the "VCCR").  Under Article 43(1) of the VCCR, consul officers are given immunity from criminal jurisdiction "in respect to acts performed in the exercise of consular functions."  This is commonly referred to as "official acts" immunity.

In their response, the prosecution vehemently but simplistically argues that Dr. Khobragade's charges are not covered by "official acts" immunity because several cases have held that "the hiring of a personal domestic worker is not an official act that confers immunity." Gov't. Opp. at pg. 6-7. (citing *Swarna v. Al-Awadi*, 622 F.3d 123 (2d Cir 2010)[3]; *Park v. Shin*,

---

[3] While *Swarna v. Al-Awadi,* is similar sounding in that a diplomat brought a domestic employee to the U.S. who later filed state and federal tort and labor claims against the diplomat for matters related to her employment, that is where the similarity ends.  The Second Circuit held that the District Court had properly dismissed the civil action without prejudice in 2002, pursuant to *22 U.S.C. §254(d),* because the Court lacked subject matter jurisdiction since the defendant was cloaked with diplomatic immunity at the time that the complaint was filed and served. Further,

313 F.3d 1138 (9th Cir. 2002) (discussed more fully below); *Baoanan v. Baja*, 627 F. Supp. 2d 155 (S.D.N.Y. 2009)[4].  All three of the cases cited by the prosecution, however, pertained to *civil claims by domestic employees for wage violations and various types of mistreatment.*  In each of these cases, the courts were tasked with determining whether *the hiring, supervision and treatment* of the personal domestic employees were acts covered by "official acts" immunity under VCCR or residual immunity under VCDR, as alleged by the respective defendants therein. *See Swarna*, 622 F.3d at 133-140, *Park*, 313 F.3d at 1141-43; *Baoanan*, 627 F. Supp. 2d at 163-170.

It is clear that the prosecution's reliance on these cases is inherently flawed for the basic reason that Dr. Khobragade has ***not*** been charged with a wage violation or for assault or other mistreatment of her domestic employee.  Dr. Khobragade stands accused of federal charges of (1) submitting a fraudulent visa application to the U.S. and (2) presenting false statements to the U.S.  *See, the Criminal Complaint and the subsequent Indictment*.[5]  Here, the prosecution conflates the issues before the Court by citing legally and factually inapposite case law for their

---

the Second Circuit commended the District Court's proper advising of Plaintiff that she could recommence the action "if she can locate them" <u>after</u> the diplomat's association Kuwaiti mission was terminated which also terminated his immunity.  *Swarna v. Al-Awadi*, 622 F.3d at 130-131.  The critical fact to be gleaned from that case and which is determinative of the instant motion is that the domestic employee's original action was dismissed because the diplomatic immunity prevented personal jurisdiction over the defendant.

[4] *Boanan*, cited by the prosecution, actually supports our argument.  There, the Court dealt with the issue of residual immunity for a former diplomat of the Philippines to the United Nations who was sued civilly by a former domestic employee.  Plaintiff had filed suit against the "former" diplomat <u>after</u> he had already returned to the Philippines and was thus already moved to "former" diplomat status.  Consequently, the Court held that the former domestic employee could pursue the action because the former diplomat had been properly served after he had ceased being a diplomat.  *Boanan* is inapplicable and completely distinguishable from the case at bar because of the fact that the action in *Boanan* was instituted when the defendant's status had already become a "former diplomat" which as a result of his returning home after his mission was completed.

[5] But let us be clear on the facts. We reject the unsubstantiated and baseless allegations made by the prosecution.  Dr. Khobragade did <u>not</u> submit a visa application.  Her domestic worker did. And Dr. Khobragade did <u>not</u> present <u>any</u> documents to the United States to support that visa application. Her domestic worker did.  And Dr. Khobragade did <u>not</u> appear at the U.S. Embassy in New Delhi to attest to the accuracy of the visa application. Her domestic worker did. And Dr. Khobragade did <u>not</u> affirm to the U.S. Embassy that the documents submitted in support of the visa application was truthful and accurate. Her domestic worker did. None of these facts are disputed.

unsupportable position.  The truth is that there are *no* cases on the ***distinct legal issue*** of whether the acts of submitting a visa application and making statements to the U.S. fall within a consul official's "exercise of consular functions."  This is an issue of first impression, which must be decided by this Court if it finds that Dr. Khobragade was not cloaked with full diplomatic immunity under Section 11 of the UN Convention and/or Article 31 of the VCDR, as argued above.

When tasked with determining the application and scope of VCCR "official acts" immunity, the Court must focus on the acts which form the basis of the claims alleged.  In *Park*, the Ninth Circuit Court of Appeals set forth a two-part test to determine whether an alleged act falls within VCCR "official acts" immunity.  First, the court must decide "whether the functions asserted are legitimate consular functions."  *Park*, 313 F.3d at 1141.  Second, if the functions asserted are legitimate consular functions, then the court must decide whether the acts "were performed in the exercise of the consular functions in question."  *Id.* at 1142.  The first question requires consideration of the scope of "legitimate consular functions" enumerated in Article 5 of the VCCR.  *Id.*

As to the first prong, Article 5(e) of the VCCR specifically provides that "helping and assisting nationals, both individuals and bodies corporate, of the sending State" are legitimate consular functions.  VCCR, Art. 5(e).  Under Count One, Dr. Khobragade is accused of assisting her domestic worker in the preparation an A-3 visa application to travel to the Unites States, and causing the submission of said visa application to the United States containing allegedly false statements.  Her domestic worker is a national of the sending state, India.  Assisting in the preparation of an A-3 visa application so the domestic worker could travel to the United States is undoubtedly an act that falls under the consular function of "helping and assisting nationals of

the sending state." VCCR, Art. 5(e). Count Two, false statements, also falls under Article 5(e). As to Count Two, the prosecution claims that Dr. Khobragade "caused to be submitted to the U.S. Department of State an employment contract that KHOBRAGADE knew to contain materially false and fraudulent statements, which contract was submitted in support of a visa application filed by KHOBRAGADE" on behalf of the domestic worker. Since the alleged fraudulent statement in the employment contract was "submitted in support of the visa application" that was filed by Dr. Khobragade on behalf of the domestic worker, said act is also clearly governed by Article 5(e).

As to the second prong, a panel of this Court has admonished that "there are no clear rules that define what actions constitute 'performing' the exercise of consular functions." *Ford v. Clement,* 834 F Supp 72, 76 (S.D.N.Y. 1993) *affd,* 29 F3d 621 (2d Cir 1994). In that case, this Court looked to *Gerritsen v. Consulado General de Mexico,* 989 F.2d 340 (9th Cir.1993) for guidance. In *Gerristen,* the Ninth Circuit had to consider whether two defendant consular officials who persuaded plaintiff to leave an area near the Mexican consulate or to desist from disrupting consular business should be afforded "official acts" immunity. *Id.* at 346. First, the Ninth Circuit agreed with the district court that "maintain[ing] the peace and dignity of the consular offices [and protecting] consular premises" were legitimate consular functions within the meaning of Article 43. *Id.* Then, the court considered whether or not the efforts by two defendant consular officials furthered these functions. *Id.* The court concluded that verbal warnings and threats to the plaintiff, without accompanying physical contact, constituted a reasonable effort to effectuate those consular functions, and thus upheld the district court's determination that the two defendants were immune from suit under the Vienna Convention. *Id.*

Here, the assistance in preparation and submission of an A-3 visa application and preparation of an accompanying employment contract, both of which were actually submitted to the United States prosecution by the domestic worker, were reasonable efforts to effectuate Dr. Khobragade's consular function of helping and assisting nationals of India. Without the application and employment contract, the domestic worker could not obtain an A-3 visa to work as a domestic employee in the United States. The prosecution's disputed allegations that false statements were contained therein do not take this case of out the "official acts" immunity provided by Article 43 of the VCCR. In the case of *Koeppel & Koeppel v. The Federal Republic of Nigeria*, 704 F.Supp. 521 (S.D.N.Y.1989), this Court rejected the argument that "no immunity should be afforded if the consular official's conduct involves breach of the law," aptly remarking that "[i]f this were the rule [...] there would be no immunity, [... since] every lawsuit asserted against a consular official accuses him or her of some violation of legal rights." 704 F.Supp. at 523–24.

Thus, both charges against Dr. Khobragade, (1) visa fraud and (2) false statements, are covered by the "official acts" immunity of the VCCR, and precluded the arrest of Dr. Khobragade on December 12, 2013 and her subsequent indictment on January 9, 2014.

For all of the foregoing reasons this proceeding must be dismissed.

Respectfully Submitted,

_____

Daniel N. Arshack

17